# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIBEL ROSARIO, et al., individually and on behalf of similarly situated employees, | : : : : |
| Plaintiffs, | : CIVIL ACTION : : |
| v. | : : |
| | : NO. 15-6478 : |
| FIRST STUDENT MANAGEMENT LLC, and FIRST STUDENT INC., | : : : |
| Defendants. | : : |

## MEMORANDUM

**Stengel, J.**                                                                                             **August 15, 2016**

This is an action brought under the Fair Labor Standards Act ("FLSA") and Section 9.1(b) of Pennsylvania's Wage Payment and Collection Law ("WPCL") by the plaintiffs against First Student Management LLC and First Student Inc. (collectively "First Student").[1] First Student employed the plaintiffs as bus drivers and driver assistants, and the plaintiffs now seek to recover wages to which they claim entitlement under the FLSA and WPCL. The complaint sets forth the following claims: (1) Count I

---

[1] The plaintiffs include Maribel Rosario, Luz Tintinagoz, Judy Rehrig, Walid Nadrams, Barry Demko, Maria Lopez, Jesica Marin, Delinda Santiago, Carlos Cordero, Juana Cordero, Joseph Barner, Isaac Maldonado, Tanika Johnson, Juana Espinal, Polly Bieber, Dorothea Wolbach, Alvin, Oltevo, Miledis Rosaio DeCestino, Brenda Vera, Maria Sanchez, Maria Soler, Grisette Quiones, Ana Parez, Virginia Maldonado, Estella Faust, Barbara Repasch, Rode Espinal, Carlene Haas, Nicole Fenstarmaker, Rosa Figueroa, Donna Betz, Belinda Diza, Mike Cech, Jacqueline Canales, Jeffrey Delbrey, Llanely Hernandez, Batania Pinentel, Ariselle Pineda, Candy Zavala, Debbie Hausrath, Telma Sorto, Maria Theu, Yuclerca Lausell, Giana Lopez, Mayra Munoz, Tina Reppertq, Michael DeHaven, Sherrie Anabui, Eric Montoya, Melissa Fermin, Ana Sanchez, Brendaliz Aponte, Urbana Lalamn, Lucie Strohl, Limary Ortiz, Wayne Chenevert, Jessica Marinez, Dana Cappel, Darlene Perry, Diane Kelchner, Justina Keelan, Nicole Tucker, Gloria Knappenberger, Jennifer Wilson, Carolyn Kilian, Mae Kline Klyde Twiss, Veronica Margiotto, Margaret Tichy, Katholine McEldridge, Jesus Elias, Joffre Ojeda, Foten Awid, Kenneth Swaver, Wanda Munoz and Sandra Gonzalez.

alleges a straight time claim under the FLSA; (2) Count II alleges an overtime claim under the FLSA; (3) Count III alleges a straight time claim under the WPCL; and (4) Count IV alleges an overtime claim under the WPCL. On February 15, 2016, First Student filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, I am dismissing with prejudice Count I and dismissing without prejudice Counts II, III and IV.

**I.      BACKGROUND**

First Student is a nationwide provider of student transportation with operations in forty-two different states. Pls.' Compl. ¶ 126. In Pennsylvania alone, First Student operates thirty-seven separate bus yards that contract with local municipal schools to provide students with intrastate transportation to extracurricular activities. Id. ¶ 83. In and before 2013, First Student employed the seventy-five plaintiffs as bus drivers and driver assistants. Id.

**A.   Pre-Trip and Post-Trip Driving Activities**

When First Student agrees to a contract to provide student transportation for a school district, First Student secures an estimate as to the approximate time it would take to drive each route under the contract ("route estimate"). Id. at ¶ 155. These route estimates are then entered into FOCUS, a computer system which generates an agenda of bus route tasks that must be performed and assigns a driver to each route at the beginning of each work day. Id. at ¶¶ 156, 158. The route estimates are compiled for each driver to form a "standard hours" estimate of the projected time the employee will work for a given week. Id. at ¶ 157.

The drivers and assistants are instructed to appear at the bus yard at a pre-designated time, usually 7:30 a.m. for morning runs and 1:30 p.m. for afternoon runs. Id. at ¶ 159. When the drivers and assistants arrive at the yard, they sign in to receive their route assignment for the day. Id. at ¶ 160. After receiving their assignments, the drivers perform an inspection of the bus and log into the EVIR system with their employee badge, at which time they are counted as being "on the clock." Id. at ¶¶ 162-65. The plaintiffs are not paid "on the clock" until they store their inspection report in the EVIR system. Id. at ¶ 164. The pre-trip activities which the drivers and assistants have to perform prior to logging their inspection report into EVIR take approximately six minutes. Id. at ¶ 165. First Student does not keep track of the six minutes spent on these pre-trip activities. Id. at ¶ 166.

When drivers return to the yard after their assigned bus run, they are required by law and First Student policy to conduct a post-trip inspection on their vehicle. Id. at ¶ 168. In practice, this means that once the vehicle is parked, the driver logs back into EVIR at which time he is considered to be "off the clock." Id. at ¶ 170. However, the driver must then perform the post-trip inspection which involves cleaning out the bus, checking to make sure there are no sleeping children, reporting any issues to the office and returning their equipment. Id. at ¶ 171. The post-trip inspection takes approximately six minutes. Id. at ¶ 172. First Student does not track post-trip activities and drivers and assistants are not paid for the six minutes it takes to perform these post-trip activities. Id. at ¶ 173.

B.     Route Estimates

When a driver logs into EVIR for purposes of the pre-trip inspection, the EVIR system sends a notice to FOCUS that the driver has commenced the inspection and FOCUS logs this notice in the standard hours report as the "task start time." Id. at ¶ 175. Similarly, when a driver logs into EVIR for purposes of the post-trip inspection, EVIR sends a notice to FOCUS that the driver has commenced the post-trip inspection and FOCUS logs this notice in the standard hours report as the "task end time." Id. at ¶ 176. The elapsed time between the task start time and the end task time is compared to the route estimate and if the elapsed time is within the tolerated frame set in the FOCUS system, the driver is paid for the route estimate. Id. at ¶ 177. If the elapsed time is not within the tolerated frame set in the FOCUS system, FOCUS creates an exception report. Id. at ¶ 178. According to the plaintiffs, First Student routinely ignores the exception reports and pays drivers only the route estimate despite the fact that drivers may have worked for a longer time. Id. at ¶ 179. If a driver does seek payment for all time worked rather than just payment for the route estimate, the driver must provide the documentation supporting the extra time. Id. at ¶ 181.

II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal

actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to allege facts sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss for failure to state a claim under Rule 12(b)(6), district courts should conduct a two-part analysis. Fowler, 578 F.3d at 210. First, the court must separate the factual and legal elements of the claim. Id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim of relief." Id. (citing Iqbal, 556 U.S. at 678).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief." Iqbal, 556 U.S. at 677-78. While Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. In other words, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Moreover, a pleading is not sufficient if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id.

## III. DISCUSSION

First Student moves to dismiss the plaintiffs' complaint pursuant to Rule 12(b)(6) on the grounds that: (1) Count I fails to allege a viable claim under the FLSA as the Third Circuit does not recognizes causes of action based on "gap time" violations of the FLSA; (2) Count II consists of boilerplate and conclusory statements which are insufficient to demonstrate a plausible claim to relief; and (3) Counts III and IV under the WPCL cannot survive without allegations demonstrating a contractual entitlement to wages.

The FLSA was enacted in 1938 to "govern the maintenance of standard hour and wage practices." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 305-06 (3d Cir. 2003). Specifically, the FLSA "establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1527 (2013). Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207." De Asencio, 342 F.3d at 306. An employer who violates § 206 or § 207 is subject to § 216(b) which provides in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

6

29 U.S.C. § 216(b).  This language "provides for payment of both unpaid wages and an equivalent amount of liquidated damages."  Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 134 (3d Cir. 1999)(citing 29 U.S.C. § 216(b)).

### A.     **Straight Time Claim—Count I**

Count I of the plaintiffs' complaint is an "overtime gap time" claim seeking to recover all straight time pay below the forty hour threshold during weeks when the properly counted hours exceeded forty hours under the FLSA.  Specifically, the plaintiffs argue that under the FLSA they are entitled to wages for:  (1) time spent in performing required procedures before and after the plaintiffs' scheduled bus runs; (2) time exceeding the route estimate plus the tolerance; and (3) time between the end of regular runs and charter runs.  First Student contends that "gap time" claims such as the one set forth by the plaintiffs in Count I are not valid in the Third Circuit.

Count I of the plaintiffs' complaint seeks compensation under the FLSA for straight time pay, otherwise known as "gap time" pay.  Gap time:

> refers to time that is not covered by the overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked.

Adair v. City of Kirkland, 185 F.3d 1055, 1059 (9th Cir. 1999).  Gap time pay claims, including "pure gap time" and "overtime gap time," have been addressed by courts in the Third Circuit.  See Hensley v. First Student Mgmt., LLC, No. CIV. A.15-3811, 2016 WL 1259968, *2 (D.N.J. Mar. 31, 2016).  What is a "gap time claim?"  This concept is best

explained through an example.  An employee who works in a meat processing plant is compensated for forty hours a week.  However, before the employee can enter the processing plant, the employee is required by company policy and state law to put on protective suiting.  Putting on the protective suiting takes a total of six minutes and the employee must put on the suit before starting work and take the suit off after ending work.  Thus, the employee spends twelve minutes a day putting on and taking off the suit.  The employee's compensation reflects only the forty hours a week that they work processing meat and not the twelve minutes a day they spend putting on and taking off the suit.  The twelve minutes of uncompensated time is "gap time."  If the employee seeks compensation for those twelve minutes a day but only worked forty hours a week, this would be a "pure gap time" claim.  If the employee seeks compensation for those twelve minutes a day but works over the forty-hour threshold, this would be an "overtime gap time" claim.

Pure gap time claims seek straight time wages for unpaid work during pay periods without overtime.  Davis v. Abington Mem'l Hosp., 765 F.3d 236, 244 (3d Cir. 2014)(holding that the Third Circuit does not recognize pure gap time claims under the FLSA).  Overtime gap time claims are "gap time claims by an employee who exceeds the overtime threshold, but whose employment contract does not compensate him or her for all non-overtime hours." Id.  Simply stated, "'overtime gap time' pay is compensation for unpaid hours worked during the course of a 40 hour workweek when a plaintiff alleges that he/she worked in excess of 40 hours in a workweek and was not compensated for

both overtime work (work in excess of 40 hours) and straight time work (work up to 40 hours)." Hensley, 2016 WL 1259968, at *2.

Neither the Supreme Court nor the Third Circuit has yet considered whether overtime gap time claims such as the one set forth by the plaintiffs in Count I are legally viable under the FLSA. Two courts have directly addressed this narrow issue of whether the FLSA contemplates overtime gap time claims: the Second Circuit in Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106 (2d Cir. 2013) and the Fourth Circuit in Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263 (4th Cir. 1996). The result was a circuit split with the Fourth Circuit recognizing the viability of overtime gap time claims in limited circumstances and the Second Circuit soundly rejecting overtime gap time claims under the FLSA.

In reaching their decision, the Fourth Circuit in Monahan relied heavily on the official interpretations promulgated by the Department of Labor and codified in 29 C.F.R. §§ 778.315, .317.[2] The DOL's official interpretations suggested to the Monahan

---

[2] Section 778.315 provides:

> In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.

Section 778.317 states that:

> An agreement not to compensate employees for certain nonovertime hours stands on no better footing since it would have the same effect of diminishing the employee's total overtime compensation. An agreement, for example, to pay an employee whose maximum hours standard for the particular workweek is 40

9

court that the determination of whether a plaintiff had a viable overtime gap time claim under the FLSA required an examination of the express and implied terms of the employment agreement. Monahan, 95 F.3d at 1273. Relying on the DOL's official interpretations, the Monahan court found that gap time claims are cognizable where the employee exceeds the overtime threshold under the FLSA and the employee's contract does not expressly or implicitly compensate the employee for all non-overtime hours.

Conversely, the Lundy court found that "the weight accorded a particular interpretation under the FLSA depends upon 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Lundy, 711 F.3d at 116 (citing Freeman v. Nat'l Broad. Co., 80 F.3d 78, 83 (2d Cir. 1996)). Unlike the Monahan court, the Lundy court did not find the DOL's interpretative guidelines persuasive and reasoned that the plain text of the FLSA did not consider or afford recovery for gap-time hours even where the employee also works overtime hours the same week.[3] Id. ("This interpretation suggests that an employer could violate FLSA by

---

> hours, $5 an hour for the first 35 hours, nothing for the hours between 35 and 40 and $7.50 an hour for the hours in excess of 40 would not meet the overtime requirements of the Act. Under the principles set forth in § 778.315, the employee would have to be paid $25 for the 5 hours worked between 35 and 40 before any sums ostensibly paid for overtime could be credited toward overtime compensation due under the Act. Unless the employee is first paid $5 for each nonovertime hour worked, the $7.50 per hour payment purportedly for overtime hours is not in fact an overtime payment.

[3] In Spencer v. First Student Mgmt. LLC, No. CIV. A.15-9069, 2016 WL 693252 (N.D. Ill. Feb. 22, 2016), the court addressed its underlying contention with the DOL's interpretative guidelines stating:

> Contrary to the Department of Labor's interpretation of the law, however, I cannot accept the idea that the FLSA implicitly provides a third private right of action—the recovery straight time pay that exceeds the minimum wage—only

failing to compensate an employee for gap time worked when the employee also works overtime; but the Department of Labor provides no statutory support or reasoned explanation for this interpretation."). The <u>Lundy</u> court held that the text of the FLSA "simply does not consider or afford a recovery for gap-time hours." <u>Id.</u> Accordingly, the <u>Lundy</u> court refused to expand the FLSA's reach beyond minimum and overtime wages and affirmed the district court's dismissal of the plaintiffs' gap time claims.

Here, the plaintiffs encourage me to adopt the Fourth Circuit's approach as set forth in <u>Monahan</u> and afford deference to the DOL's interpretative guidelines in considering whether their overtime gap time claim is cognizable under the FLSA. I decline to do so. Rather, I find that a plain reading of the FLSA's statutory text simply does not support a claim for the failure to pay straight or gap time. <u>Id.</u> at 116 ("[T]he text of FLSA requires only payment of minimum wages and overtime wages. It simply does not consider or afford a recovery for gap-time hours."); <u>Espenscheid v. DirectSat USA, LLC</u>, No. CIV. A.09-625, 2011 WL 10069108, *12 (W.D. Wis. Apr. 11, 2011)("As the court of appeals pointed out in <u>Klinghoffer</u>, 285 F.2d at 494, because the

---

when a worker's hours exceed the statutory threshold for overtime pay. As Judge Crabb articulated in <u>Espenscheid</u>:

> [T]he cases holding otherwise [allowing straight time FLSA claims] do not explain how the potentially arbitrary consequences of their rules are supported by the language of the FLSA. In particular, they do not explain adequately why the remedial purpose of the FLSA is furthered by prohibiting employees who work just below the overtime threshold from asserting gap-time claims, but allowing an employee who works just one hour or one minute past the overtime threshold to assert such a claim. I can find no language in the FLSA to support such a rule.

<u>Spencer</u>, 2016 WL 693252, at *2 (citing <u>Espenscheid</u>, 2011 WL 10069108, at *13).

11

FLSA itself requires only payment of minimum wages and overtime wages, nothing in the statutory text expressly prevents employers from requiring employees to work some hours below the overtime threshold for 'free,' provided that the employees' average wage exceeds the minimum."). Furthermore, to the extent that the plaintiffs seek gap time compensation, the plaintiffs' state law remedies are sufficient.[4] Allowing the plaintiffs to assert an overtime gap time claim here would be to work an expansion of the congressional intent reflected in the text of the FLSA. The "prohibited acts" set forth in § 215 of the FLSA includes violations of § 206 (minimum wage provision), § 207 (maximum hours provision), § 212 (child labor provision, § 211(c)(record keeping requirements) or regulations issued under § 214 (records requirement for employment of apprentices). As Judge Crabb points out in Espenscheid, the list of prohibited acts does not include violations for "failure to pay straight or gap time wages or the overall compensation anticipated by an employee agreement." Espencheid, 2011 WL 10069108, *13 ("The core rights and obligations created by the FLSA are the minimum wage levels and entitlement to overtime pay for work above specified maximum hours set forth in § 206 and § 207."). Additionally, § 216's damages provision limits recovery to "the

---

[4] Recognizing an important distinction between the FLSA and state law remedies for wage claims, the Lundy court stated:

> So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week. In this way federal law supplements the hourly employment arrangement with features that may not be guaranteed by state laws, without creating a federal remedy for all wage disputes—of which the garden variety would be for payment of hours worked in a 40-hour week. For such claims there seems to be no lack of a state remedy, including a basic contract action.

Lundy, 711 F.3d at 116.

amount of [an employee's] unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). There is no indication in the text of § 216 that the FLSA contemplated recovery of straight or gap time wages. Without a clear reflection of congressional intent for the FLSA to encompass straight time claims in the statutory language, I agree with the conclusion in Lundy that the plain text of the FLSA does not afford redress for uncompensated gap time hours. Accordingly, I am granting the defendants' motion to dismiss on Count I.

### B. FLSA Overtime—Count II

Count II of the plaintiffs' complaint alleges that First Student did not compensate them for hours worked in excess of forty per week under the FLSA. Specifically, the plaintiffs state that in an effort to avoid their obligations under the FLSA, First Student divides the drivers' time into "regular" and "charter rate" categories and thereby underreports time actually worked by employees. Pl.'s Compl. ¶ 195. First Student argues that Count II of the plaintiffs' complaint is fatally threadbare and is therefore subject to dismissal for failure to meet the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

In Davis, the Third Circuit adopted a "middle-ground approach" for pleading a plausible FLSA overtime claim. Davis, 765 F.3d at 241. According to the Davis court, a plaintiff seeking to establish a plausible FLSA overtime claim "'must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours.'" Id. (citing Lundy, 711 F.3d at 114). Although this does not mean that "a plaintiff must identify the exact dates and times that she worked overtime," a

plaintiff is required to "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts, so that the allegations concerning a typical forty-hour week include an assertion that the employee worked additional hours during such a week." Ford-Greene v. NHS, Inc., 106 F.Supp.3d 590, 610 (E.D. Pa. 2015)(citing Davis, 765 F.3d at 243).

In this case, the plaintiffs' complaint states that "[d]uring the course of employment, Plaintiffs and members of the Potential FLSA Class, have, on regular occasions, worked more than forty hours per week." Pl.'s Compl. ¶ 191. The complaint goes on to explain that First Student divides the drivers' times in "regular" and "charter rate" categories and by doing so underreports time actually worked by drivers. Id. at ¶ 195. According to the plaintiffs, "[a]s long as the number of hours does not exceed 40 for any given category, even though the total number of hours worked in a given week exceeds forty (40) hours, the drivers and drivers' assistants would only be paid their usual rate of pay." Id. at ¶ 196. First Student contends that these allegations are fatally deficient, particularly in light of Davis, as "none of the over 70 named Plaintiffs allege that he or she worked at least forty hours in a workweek where he or she also worked uncompensated time in excess of forty hours." Defs.' Rep. 7. I agree that the plaintiffs' complaint fails to state a plausible FLSA overtime claim in accordance with Davis' pleading standard. The complaint lacks any specific factual allegations establishing that the plaintiffs worked uncompensated time in excess of forty hours in a particular workweek in which he or she also worked at least forty hours. Moreover, the complaint contains no approximation of the "charter" hours for which the drivers were not

compensated.  The only allegation contained within the complaint is a general statement that on "regular occasions" the plaintiffs worked more than forty hours per week.  In the absence of any specific factual support, these legal conclusions by themselves are not sufficient to support a plausible FLSA overtime claim.  Therefore, I am granting the defendants' motion to dismiss.

      **C.**     **<u>Claims Under the WPCL—Counts III and IV</u>**

Counts III and IV of the plaintiffs' complaint seek recovery under the WPCL for all unpaid time below and above the forty hour threshold.  First Student moves to dismiss the plaintiffs' state law claims under the WPCL on the basis that the plaintiffs failed to adequately allege an "operative agreement" requiring the payment of wages the plaintiffs seek.  First Student argues that the failure to allege an operative and express agreement between First Student and the plaintiffs is fatal to the plaintiffs' WPCL claim.

The plaintiffs admit that an error occurred in the drafting of their complaint and that they never intended for their claims to be limited to the WPCL.  Pls.' Resp. 11, n. 4.  Rather, the plaintiff requests that this Court read the complaint broadly and construe their allegations as establishing a claim under Pennsylvania's Minimum Wage Act ("PAMWA").  The only claims apparent in the plaintiffs' complaint are those set forth under the WPCL.  There is nothing in the complaint that would place the defendants on notice that they would face claims under PAMWA and therefore, I will not adopt such a reading of the plaintiffs' complaint.  <u>K.E. v. Dover Area Sch. Dist.</u>, No. CIV. A.15-1634, 2016 WL 2897614, *2 (M.D. Pa. May 18, 2016)("Federal notice and pleading rules require the complaint to provide the defendant fair notice of what the claim is and the

grounds upon which it rests.")(citations omitted); Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

The WPCL "'does not create a right to compensation . . . .[r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.'" De Asencio, 342 F.3d at 309 (citing Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996)). 43 P.S. § 260.2a of the WPCL defines wages as all earnings, fringe benefits and wage supplements, and states that fringe benefits or wage supplements are "all monetary employer payments to provide benefits under any employee benefit plan . . . as well as separation, vacation, holiday, or guaranteed pay; reimbursement for expenses; union dues withheld from the employes' pay by the employer; and any other amount to be paid pursuant to an agreement to the employee." 43 P.S. § 260.2a.

First Student argues that the plaintiffs' WPCL claims are insufficient as a matter of law as the plaintiffs have failed to allege the existence of a formal, express contract between the plaintiffs and First Student which might entitle the plaintiffs to the straight time and overtime wages they seek. As First Student points out, the plaintiffs do not allege that their WPCL claims rest upon a written contractual relationship. The plaintiffs state that they are not required to allege the existence of a formal operative contract in order to recover earned wages under the WPCL. Rather, the plaintiffs argue that they are entitled to earned wages under the WPCL pursuant to their "employment relationship" with First Student. Accordingly, the issue before the court is whether the WPCL

16

contemplates recovery of earned wages based upon less formal agreements than express employment contracts between the employer and employee.

Indeed, the Third Circuit has recognized that a formal written contract is not required to support a legally viable WPCL claim. De Asencio, 342 F.3d at 309. However, a plaintiff who has not alleged that they work under a written employment contract or collective bargaining agreement is still required "to establish the formation of an implied oral contract to recover under the WPCL." Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F.Supp.3d 645, 649 (E.D. Pa. 2015)(citing De Asencio, 342 F.3d at 309). In other words, a plaintiff seeking recovery under the WPCL "must allege a contractual right—either written or oral—to the claimed wages . . . " in order to survive a 12(b)(6) motion to dismiss. MacKereth v. Kooma, Inc., No. CIV. A.14-4824, 2015 WL 2337273, *10 (E.D. Pa. May 14, 2015); Bosler v. Bio-Medical Applications of Pa., No. CIV. A.14-1530, 2015 WL 479913, *2 (E.D. Pa. Feb. 4, 2015); Drummond v. Herr Foods Inc., No. CIV. A.13-5991, 2014 WL 80729, *3 (E.D. Pa. Jan. 9, 2014).

In this case, the plaintiffs have failed to allege any contractual right to earned wages under the WPCL. The plaintiffs concede that they have not alleged a formal written contract entitling them to the wages they seek and the plaintiffs' complaint is devoid of any allegations establishing an implied oral contract which might support their WPCL claims. The plaintiffs state that "[t]he gravamen of Plaintiffs [sic] complaint is essentially, that they were, pursuant to the employment relationship, entitled to be paid for all work done, and as a result of the practices set forth in the complaint, they were not paid for all work done." Pls.' Resp. 12. Although the plaintiffs argue that they are

entitled to earned wages under the WPCL on the basis of an "employment relationship," the mere existence of an employer-employee relationship is not sufficient to establish a contractual right to recovery under the WPCL.  The Third Circuit has clearly required plaintiffs lacking a formal written employment contract to allege at the very least an implied oral contract to support their WPCL claims.  The plaintiffs must set forth more than the mere existence of an employer relationship in order to establish a plausible claim for relief under the WPCL.  Given the plaintiffs' failure to allege an implied contractual right to recovery under the WPCL, I am dismissing Counts III and IV of the plaintiffs' complaint for failure to state a claim.

## IV.    CONCLUSION

For the reasons discussed above, I am dismissing Count I of the plaintiffs' complaint with prejudice and dismissing without prejudice Counts II, III and IV.  The plaintiffs shall submit an amended complaint within twenty days.

An appropriate Order follows.