IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIBEL ROSARIO, et al., individually and on behalf of similarly situated employees, | :<br>:<br>:<br>: |
| Plaintiffs, | : CIVIL ACTION<br>:<br>: |
| v. | :<br>: NO. 15-6478 |
| FIRST STUDENT MANAGEMENT LLC, and FIRST STUDENT INC., | :<br>:<br>:<br>: |
| Defendants. | : |

# **M E M O R A N D U M**

**Stengel, J.**                                                                                                       **March 23, 2017**

This is an action brought under the Fair Labor Standards Act (FLSA) and Pennsylvania's Wage Payment and Collection Law (WPCL) by the plaintiffs against First Student Management LLC and First Student Inc. (collectively "First Student").[1]  First

---

[1] The named plaintiffs include Maribel Rosario, Luz Tintinagoz, Judy Rehrig, Walid Nadrams, Barry Demko, Maria Lopez, Jesica Marinez, Delinda Santiago, Carlos Cordero, Juana Cordero, Joseph Barner, Isaac Maldonado, Tanika Johnson, Juana Espinal, Polly Bieber, Dorothea Wolbach, Alvin, Oltevo, Miledis Rosaio DeCestino, Brenda Vera, Maria Sanchez, Maria Soler, Grisette Quiones, Ana Parez, Virginia Maldonado, Estella Faust, Barbara Repasch, Rode Espinal, Carlene Haas, Nicole Fenstarmaker, Rosa Figueroa, Donna Betz, Belinda Diza, Mike Cech, Jacqueline Canales, Jeffrey Delbrey, Llanely Hernandez, Batania Pinentel, Ariselle Pineda, Candy Zavala, Debbie Hausrath, Telma Sorto, Maria Theu, Yuclerca Lausell, Giana Lopez, Mayra Munoz, Tina Reppertq, Michael DeHaven, Sherrie Anabui, Eric Montoya, Melissa Fermin, Ana Sanchez, Brendaliz Aponte, Urbana Lalamn, Lucie Strohl, Limary Ortiz, Wayne Chenevert, Jessica Marinez, Dana Cappel, Darlene Perry, Diane Kelchner, Justina Keelan, Nicole Tucker, Gloria Knappenberger, Jennifer Wilson, Carolyn Kilian, Mae Kline Klyde Twiss, Veronica Margiotto, Margaret Tichy, Katholine McEldridge, Jesus Elias, Joffre Ojeda, Foten Awid, Kenneth Swaver, Wanda Munoz and Sandra Gonzalez. (Doc. No. 17 ¶¶ 2–77).

1

Student employed the plaintiffs as bus drivers and driver assistants, and the plaintiffs now seek to recover wages to which they claim entitlement under the FLSA and WPCL.

The amended complaint sets forth the following claims: (1) an overtime claim under the FLSA; (2) a straight time claim under the WPCL; and (3) an overtime claim under the WPCL.[2] First Student filed a motion to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, I am granting the motion to dismiss.

## I.    FACTUAL BACKGROUND

First Student is a nationwide provider of student transportation with operations in forty-two different states. In Pennsylvania alone, First Student operates thirty-seven separate bus yards that contract with local municipal schools to provide students with intrastate transportation to extracurricular activities. In and before 2013, First Student employed the seventy-five plaintiffs as bus drivers and driver assistants.

### A.    *Pre-Trip and Post-Trip Driving Activities*

When First Student agrees to a contract to provide student transportation for a school district, First Student secures an estimate as to the approximate time it would take to drive each route under the contract ("route estimate"). These route estimates are then entered into FOCUS, a computer system which generates an agenda of bus route tasks that must be performed and assigns a driver to each route at the beginning of each work

---

[2] This is the second motion to dismiss I have entertained in this case. I granted First Student's original motion to dismiss. I dismissed the FLSA straight time claims with prejudice and dismissed the FLSA overtime claim and the WPCL claims without prejudice. (Doc. No. 13).

day. The route estimates are compiled for each driver to form a "standard hours" estimate of the projected time the employee will work for a given week.

The drivers and assistants are instructed to appear at the bus yard at a pre-designated time, usually 7:30 a.m. for morning runs and 1:30 p.m. for afternoon runs. When the drivers and assistants arrive at the yard, they sign in to receive their route assignment for the day. After receiving their assignments, the drivers perform an inspection of the bus and log into the EVIR system with their employee badge, at which time they are counted as being "on the clock." The plaintiffs are not paid "on the clock" until they store their inspection report in the EVIR system. The pre-trip activities which the drivers and assistants have to perform prior to logging their inspection report into EVIR take approximately six minutes. First Student does not keep track of the six minutes spent on these pre-trip activities.

When drivers return to the yard after their assigned bus run, they are required by law and First Student policy to conduct a post-trip inspection on their vehicle. In practice, this means that once the vehicle is parked, the driver logs back into EVIR at which time he is considered to be "off the clock."  However, the driver must then perform the post-trip inspection which involves cleaning out the bus, checking to make sure there are no sleeping children, reporting any issues to the office and returning their equipment.  The post-trip inspection takes approximately six minutes.  First Student does not track post-trip activities and drivers and assistants are not paid for the six minutes it takes to perform these post-trip activities.

3

### B. *Route Estimates*

When a driver logs into EVIR for purposes of the pre-trip inspection, the EVIR system sends a notice to FOCUS that the driver has commenced the inspection and FOCUS logs this notice in the standard hours report as the "task start time." Similarly, when a driver logs into EVIR for purposes of the post-trip inspection, EVIR sends a notice to FOCUS that the driver has commenced the post-trip inspection and FOCUS logs this notice in the standard hours report as the "task end time." The elapsed time between the task start time and the end task time is compared to the route estimate and if the elapsed time is within the tolerated frame set in the FOCUS system, the driver is paid for the route estimate. If the elapsed time is not within the tolerated frame set in the FOCUS system, FOCUS creates an exception report. According to the plaintiffs, First Student routinely ignores the exception reports and pays drivers only the route estimate despite the fact that drivers may have worked for a longer time. If a driver does seek payment for all time worked rather than just payment for the route estimate, the driver must provide the documentation supporting the extra time.

## II. PROCEDURAL BACKGROUND

In their original complaint, the plaintiffs brought a straight time claim under the FLSA, an overtime claim under the FLSA, and two claims under Pennsylvania's WPCL. I dismissed the FLSA straight time claim with prejudice. Rosario v. First Student Mgmt. LLC, Civ. A. No. 15-6478, 2016 WL 4367019, at *8 (E.D. Pa. Aug. 16, 2016).

I dismissed the plaintiffs' FLSA overtime claim because none of the plaintiffs met the pleading standard for a FLSA overtime claim. Id. at *6 (citing Davis v. Abington

Mem'l Hosp., 765 F.3d 236 (3d Cir. 2014)). In doing so, I discussed the specific requirements for pleading a FLSA overtime claim, as dictated by the Third Circuit in Davis, and allowed plaintiffs to amend this claim. Id. at *6, 8. I dismissed the plaintiffs' WPCL claims because they failed to allege a contract entitling them to wages, which is a prerequisite to bringing a WPCL claim. Id. at *7–8. I also permitted the plaintiffs to amend their WPCL claims. Id.

### III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to allege facts sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss for failure to state a claim under Rule 12(b)(6), district courts should conduct a two-part analysis. Fowler, 578 F.3d at 210. First, the court must separate the factual and legal elements of the claim. Id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any

legal conclusions." Id.  Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim of relief." Id. (citing Iqbal, 556 U.S. at 678).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief." Iqbal, 556 U.S. at 677-78.  While Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678.  In other words, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Moreover, a pleading is not sufficient if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id.

## IV. DISCUSSION

As mentioned above, this is an action brought under the Fair Labor Standards Act (FLSA) and Pennsylvania's Wage Payment Collection Law (WPCL). First Student filed a motion to dismiss the plaintiffs' amended complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. I will grant the motion to dismiss.

### A. *The FLSA Collective Action*

The posture and nature of this case requires an understanding of the FLSA collective action.

Employees may bring actions on behalf of themselves and "other employees similarly situated" for specific violations of the FLSA. 29 U.S.C. § 216(b); Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1526 (2013). This mechanism is known

as a "collective action." Symczyk, 133 S. Ct. at 1526; see also Halle v. West Penn Allegheny Health Sys. Inc., 842 F.3d 215, 222–27 (3d Cir. 2016) (explaining the fundamentals of a FLSA collective action).[3]

In the context of a collective action, the distinction between "named plaintiffs" and "unnamed plaintiffs" is crucial. As recently explained by the United States Court of Appeals for the Third Circuit, "[t]he collective action is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint in behalf of a group of other, initially unnamed employees who purport to be similarly situated to the named plaintiff." Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 85 (3d Cir. 2017) (internal footnote and quotations omitted) (citing Halle, 842 F.3d at 223).

Courts employ a two-step approach in determining whether an action under the FLSA can be certified as a collective action. Halle, 842 F.3d at 224. The first step requires a "named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." Id. If the named plaintiffs meet their burden at this first step,

---

[3] A collective action under the FLSA is different than a class action brought under Federal Rule of Civil Procedure 23. When a class action under Rule 23 is filed, the proposed class of plaintiffs is automatically deemed a part of the action unless they individually opt out of the action. Halle, 842 F.3d at 224. A collective action under the FLSA works the opposite way. Under the FLSA, "the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs," meaning that the proposed class of plaintiffs only becomes a part of the action if they individually opt in. Id. Potential plaintiffs in a FLSA collective action "opt in" by filing consent-to-join forms with the district court. Id. at 225. However, these opt-in plaintiffs only become a part of the collective action if the court subsequently deems them similarly situated to the named plaintiffs. Id. at 225–26. This distinction permeates this case and is discussed in greater detail *infra*.

"the court will 'conditionally certify' the collective action for the purposes of facilitating notice to potential 'opt-in' plaintiffs." Camesi v. University of Pitt. Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013). Once the collective action is conditionally certified, the parties conduct discovery and employees wishing to join the collective action must opt in. Id. After discovery, the second step of the certification process requires the court to make a final determination as to whether the named plaintiffs are "similarly situated" to the opt-in plaintiffs. Id. This second step is sometimes referred to as "final certification." Id.

Thus, there is a fundamental difference under the FLSA between a "named plaintiff" and an "opt-in" plaintiff. Halle, 842 F.3d at 222–27. Unlike the named plaintiffs, who commence their action by formally filing a complaint, "opt-in" plaintiffs are not named in the complaint. Karlo, 849 F.3d at 85. Instead, "opt-in" plaintiffs seek to join the action as parties by filing consent-to-join forms after the complaint is filed. If the court determines that the opt-in plaintiffs are similarly situated to the named plaintiffs, at that point, the opt-in plaintiffs become actual parties to the action. Halle, 842 F.3d at 226–27. Even so, the collective action still proceeds on a "representative status," meaning that the named plaintiffs represent the interests of the opt-in plaintiffs. Id. at 226.[4]

To be sure, this case has not yet proceeded to the certification stage. Neither party has filed a motion for conditional certification. Nonetheless, the legal distinction

---

[4] An "opt-in" plaintiff is the same thing as an "unnamed plaintiff." The point is that opt-in plaintiffs are not named in the complaint and the FLSA's certification process requires these unnamed plaintiffs to opt in. Throughout this Opinion, the terms "unnamed plaintiff" and "opt-in" plaintiff are used interchangeably.

between "named plaintiffs" and "opt-in" (or "unnamed") plaintiffs is critical to the instant motion to dismiss.

This action was commenced by seventy-six named plaintiffs who filed a complaint against the defendants. (Doc. Nos. 1, 17 at 2). These seventy-six individuals brought FLSA claims against the defendants as named plaintiffs "on behalf of themselves and a class of other similarly situated employees." (Doc. No. 17 ¶ 1). Interestingly, months after filing the original complaint, some of the named plaintiffs filed consent-to-join forms. (Doc. No. 9). In these consent-to-join forms, they indicated their intent "to be represented by the named plaintiffs and lead counsel." (Doc. No. 9-1 ¶ 4 at each page).

The practice of filing a consent-to-join form is a procedure reserved for "opt-in" plaintiffs—not "named" plaintiffs. E.g., Halle, 842 F.3d at 225. The "opt-in" plaintiffs are "initially unnamed" in the complaint, Karlo, 849 F.3d at 85, and may later join the action as parties only if they are certified by the court as being "similarly situated" to the named plaintiffs, Halle, 842 F.3d at 225–26 & n.10. Therefore, in this case, the named plaintiffs' filing of consent-to-join forms was superfluous given that they were already named plaintiffs by virtue of their filing of the complaint.[5]

With this understanding in mind, I will now consider whether the named plaintiffs have alleged a plausible overtime claim under the FLSA.

---

[5] In other words, the named plaintiffs did not become opt-in plaintiffs simply because they filed consent-to-join forms after they filed their complaint. By initially filing the complaint, and pleading that they were bringing the action "on behalf of . . . a class of other similarly situated employees," (Doc. Nos. 1, 17 ¶ 1), these individuals assumed the role of "named plaintiffs."

9

### B.     *The Named Plaintiffs' FLSA Overtime Claims*

The distinction between "named plaintiffs" and "opt-in" plaintiffs is crucial here because only "named plaintiffs" have a duty to plead plausible claims. Obviously, the opt-in plaintiffs have no burden to state a claim for relief in the complaint because opt-in plaintiffs are not named in a complaint.

In Davis v. Abington Memorial Hospital, the U.S. Court of Appeals for the Third Circuit set forth the proper pleading standard for a FLSA overtime claim. 765 F.3d 236, 241 (3d Cir. 2014). The court held that, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." Davis, 765 F.3d at 241 (alterations in original) (quoting Lundy v. Catholic Health Sys., 711 F.3d 106, 114 (2d Cir. 2013)). Applying this rule, the court dismissed the named plaintiffs' FLSA overtime claims because each named plaintiff failed to plead "a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours." Id. at 243.

In this case, only three of the seventy-six named plaintiffs have alleged plausible claims under the FLSA: Nicole Tucker, Brenda Vera, and Jessica Marinez. (Doc. No. 17 ¶¶ 202–38).[6] The other seventy-three named plaintiffs, like the plaintiffs in Davis, have failed to allege a single workweek in which they worked forty hours and were also not

---

[6] The amended complaint alleges a FLSA overtime claim on behalf of an individual named Tina Turner-Miller. (Doc. No. 17 ¶¶ 229–34, 36). However, Tina Turner-Miller is not a party to this action. (Id. ¶¶ 2–77). Thus, she has no viable claim as a named plaintiff. First Student points this out in its motion to dismiss, but the plaintiffs fail to address Ms. Turner-Miller anywhere in their response to First Student's motion to dismiss. (Doc. No. 21).

compensated for their overtime. Plaintiffs argue that each named plaintiff does not need to allege a FLSA violation because a FLSA collective action is representative in nature. According to plaintiffs, because they allege instances in which three of the named plaintiffs were not compensated for time worked in excess of forty hours, all seventy-six named plaintiffs have stated claims. This is simply not true.

More specifically, plaintiffs contend that "it would be simply impossible for *every member of a collective action* under the FLSA with opt-ins being added as they are discovered to comply with a standard that required the pleading to list every instance of a workweek where *every plaintiff* was cheated out of the overtime pay he or she had earned." (Doc. No. 21 at 8) (emphasis added). However, this is not the law. Nor is it First Student's proposed pleading standard. Plaintiffs are correct that the law does not require "every plaintiff" or "every member of a collective action" to meet the pleading standards of Rule 8. See Karlo, 849 F.3d at 85 (explaining that only the "named employee plaintiffs" must file a complaint, while the "initially unnamed employees" become parties later through the opt-in process). However, the law does require every *named* plaintiff to plead a FLSA violation. Davis, 842 F.3d at 242–43. In sum, although every potential member of a FLSA collective action need not satisfy Rule 8's pleading requirements, every named plaintiff who elects to file suit must.[7]

Davis, and our FLSA jurisprudence, makes clear that named plaintiffs in a putative FLSA collective action must sufficiently plead violations of the FLSA. Simply because

---

[7] Plaintiffs' emphasis on FLSA collective actions' representative nature ignores the fact that this case is not yet a collective action. Plaintiffs have not taken any steps to have their proposed class certified. Rather, they have merely filed a complaint.

FLSA collective actions have the potential to include thousands of members does not relieve each named plaintiff of its individual burden to state a legal claim for relief. Since named plaintiffs represent the proposed opt-in plaintiffs' interests, it necessarily follows that each named plaintiff must establish that it has suffered a FLSA violation.[8] Davis, 765 F.3d at 242–43. Here, only three of the seventy-six named plaintiffs have satisfied the Davis pleading standard under the FLSA.

Accordingly, I will grant First Student's motion to dismiss the FLSA claims of the seventy-three named plaintiffs who failed to allege that they worked a forty-hour work week in which they were not compensated for their overtime.[9]

---

[8] Rather than commencing an action with nearly 100 named plaintiffs, the plaintiffs could have listed only the three named plaintiffs who plead FLSA violations as the named plaintiffs in the complaint. (Doc. No. 17 ¶¶ 202–38). The other plaintiffs who are named in the amended complaint could have joined the action later in the litigation through the opt-in certification process. This would have relieved these seventy-three plaintiffs from the pleading requirements of Davis and Rule 8. However, the plaintiffs did not choose this route. Instead, they chose to list nearly 100 named plaintiffs in their complaint and amended complaint. By doing this, the plaintiffs necessarily took on the burden of pleading FLSA violations on behalf of each of these named plaintiffs. Fed. R. Civ. P. 8(a); Davis, 765 F.3d at 243.

[9] I will not grant leave for the plaintiffs to amend their complaint to again modify their FLSA overtime claims. They have had two previous opportunities to do so. Indeed, in my previous Opinion regarding First Student's initial motion to dismiss, I clearly identified the factual and legal deficiencies in plaintiffs' pleading of the FLSA overtime claim. Rosario, 2016 WL 4367019, at *6. This Opinion discussed the Davis pleading standard at length, going so far as to specifically notify the plaintiffs of their duty to allege a forty hour workweek in which the plaintiffs were also not compensated for their overtime. Id. Despite this clear guidance, nearly all of the named plaintiffs failed to plead such facts in their amended complaint.
    Under Federal Rule of Civil Procedure 15(a), district courts should grant leave to amend when justice so requires. Nevertheless, district courts possess "discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) (affirming district court's denial of leave to amend when plaintiff was on notice of the complaint's deficiencies and failed to rectify them in his amended complaint).

### C. *Preemption of the Plaintiffs' WPCL Claims*

Plaintiffs also bring claims under Pennsylvania's Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq.* (WPCL). They claim First Student is liable for failing to pay them wages as required by their express employment agreements. First Student argues the WPCL claims must be dismissed because they are preempted by the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA).

#### 1. **The WPCL**

The WPCL provides a civil remedy for employees to "recover unpaid wages" from their employers. 43 P.S. § 260.9a(b).

The WPCL does not create a general right to compensation. DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (citing Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996)). The WPCL simply "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." Id. (quoting Antol, 100 F.3d at 1117). "The contract between the parties governs in determining whether specific wages are earned." Id. (quoting Antol, 100 F.3d at 1117). Thus, in order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff bringing a WPCL claim must allege a contractual right—either written or oral—to claimed wages. Rosario, 2016 WL 4367019, at *7.

I previously dismissed plaintiffs' WPCL claims because the plaintiffs did not allege, in their original complaint, any contractual agreement between themselves and defendants. Id. at *8. In plaintiffs' amended complaint, they allege an express contractual agreement between themselves and the defendants. (Doc. No. 17 ¶¶ 83, 152–55, 248–49,

251). While the plaintiffs allege an express agreement—and even quote directly from the agreement—they do not identify the agreement in any way. However, First Student points to a collective bargaining agreement ("CBA") between the plaintiffs and defendants as the agreement upon which plaintiffs base their WPCL claims.[10]

The language of the quoted agreement in the plaintiffs' amended complaint is identical to the provisions of the CBA entered into between plaintiffs and defendants.[11] In plaintiffs' response to First Student's motion to dismiss, plaintiffs do not dispute that the CBA is the sole agreement they rely on in support of their WPCL claims. Nor do they dispute the applicability of the CBA or its authenticity. See Hughes v. United Parcel Serv., Inc., Civ. A. No. 14–3822, 2015 WL 1021312, at *3 (E.D. Pa. Mar. 6, 2015) (rejecting plaintiffs' argument that defendants could not attach a copy of the CBA the plaintiffs relied upon in their complaint because it would be improper to "deny Defendants the right to rely upon the very CBA that forms the basis of [the plaintiffs'] relationship with their employer, and that forms the basis of each of their claims"). It is

---

[10] I may consider the CBA produced by defendants. See Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 780–81 (W.D. Pa. 2000) ("[A] plaintiff's failure to attach or cite documents explicitly relied on or integral to the complaint does not preclude the court, when considering a motion to dismiss, from reviewing the text of these extrinsic documents."), aff'd, 276 F.3d 579 (3d Cir. 2001); see also In re Asbestos Prods. Liability Litig. (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' . . . or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'") (internal citations omitted) (alteration in original)).

[11] Compare Pls.' Am. Compl., Doc. No. 17 ¶¶ 83, 153–54, 248–49, 251, with Nat'l Master First Student Agreement, Ex. 1, Doc. No. 18-3, at p. 8, art. 39, Agreement Between Teamster Local Union 773 & First Student, Inc. Pleasant Valley Sch. Dist., Ex. 2, Doc. No. 18-3, at pp. 13–15, art. 8 & p. 18, art. 11, and Agreement Between Teamster Local Union 773 & Allentown First Student, Ex. 3, Doc. No. 18-3, at p. 10, art. 11.

clear that the agreement plaintiffs rely on in their amended complaint is an authentic CBA entered into between themselves and the defendants.

### 2. LMRA Preemption

In support of its motion to dismiss, First Student argues that the plaintiffs' WPCL claims are preempted by § 301 of the LMRA. I agree.

It is well-established that, in the context of labor law, federal law preempts state law claims that are based upon the terms of a CBA. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 205–08 (1985); Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co., 369 U.S. 95, 104 (1962). More specifically, when resolution of a state-law claim is substantially dependent upon the terms of a CBA, then the claim is either treated as a § 301 claim under the LMRA or dismissed as preempted. Allis-Chalmers, 471 U.S. at 220.

The Third Circuit has followed the dictates of Lucas Flour and Allis-Chalmers in analyzing WPCL claims. When a WPCL claim is based squarely upon the terms of a CBA, it is preempted by § 301 of the LMRA. E.g., Wheeler v. Graco Trucking Corp., 985 F.2d 108, 113 (3d Cir. 1993); Hughes, 2015 WL 1021312, at *4; Lynn v. Jefferson Health Sys., Civ. No. 09–6086, 2010 WL 3656634, at *4 (E.D. Pa. Sept. 15, 2010). As explained above, a WPCL claim necessarily requires the existence of a contract. It only follows that when the contract relied upon to support a WPCL claim is a CBA, that claim is preempted by § 301 of the LMRA. E.g., Lynn, 2010 WL 3656634, at *4.

In this case, plaintiffs' WPCL claims are substantially dependent upon interpretation of the CBA because the WPCL claims are based upon the express terms of

the CBA. Therefore, plaintiffs' WPCL claims are preempted by § 301 of the LMRA. Wheeler, 985 F.2d at 113; Hughes, 2015 WL 1021312, at *4; Lynn, 2010 WL 3656634, at *4. Just like the plaintiffs in Hughes, the plaintiffs here cannot save their WPCL claims from preemption by arguing that they did not attach copies of the CBA to their amended complaint. 2015 WL 1021312, at *3. The plaintiffs here, as in Hughes, "cannot deny Defendants the right to rely upon the very CBA that forms the basis of their relationship with their employer, and that forms the basis of each of their claims." Id.[12] Also as in Hughes, here, First Student's "attachment of the CBA to their Motions to Dismiss, and their reliance upon the CBA, is perfectly proper." Id.

In responding to First Student's motion to dismiss—which attached the CBA—the plaintiffs do not dispute that the CBA is the sole contract that their amended complaint references and relies upon. It appears that the plaintiffs attempt to side-step pleading the existence of the CBA perhaps because they are aware of the LMRA's preemptive effect on a WPCL claim that relies upon a CBA. However, this approach has been foreclosed numerous times. See Hughes, 2015 WL 1021312, at *4 (rejecting plaintiffs' attempts to avoid the import of a CBA when defendants attached it to their motion to dismiss and the

---

[12] The plaintiffs argue that finding their WPCL claims preempted would be "premature" at this stage of the litigation because discovery has not commenced. This argument is unavailing. Plaintiffs are aware that, to state a claim under the WPCL, they must allege the existence of a contract, either written or oral. In their amended complaint, the plaintiffs quote various provisions of the CBA, though they do not identify the quoted material as coming from the CBA. Notably, however, the plaintiffs do not dispute they are relying on the CBA as the contract that supports their WPCL claims. It is disingenuous for the plaintiffs to quote from provisions of the CBA in order to state a WPCL claim, but then argue that I may not consider the CBA because discovery has not commenced. Put differently, plaintiffs cannot have their cake and eat it too. If they wish to state a claim under the WPCL, they must allege a contract. If that contract just so happens to be a CBA, the plaintiffs run the risk of the WPCL claim being preempted by § 301 of the LMRA.

complaint relied on the terms of the CBA); Lynn, 2010 WL 3656634, at *4 (relying on CBA, which defendants attached to their motion, in finding WPCL claim preempted by § 301 of the LMRA). It is clear that the contract supporting plaintiffs' WPCL claims is a CBA. As the plaintiffs' WPCL claim "is based squarely on the terms of the collective bargaining agreement," Wheeler, 985 F.2d at 113, it follows that the WPCL is preempted by the LMRA, id.

Plaintiffs argue in their response that First Student has not pointed to any agreement between First Student and the plaintiffs. (Doc. No. 21 at 14). Plaintiffs also argue First Student has not produced any agreements. (Id.). Plaintiffs are incorrect. First Student has produced multiple CBAs that were binding on plaintiffs and defendants. (Doc. No. 18-3).

For all the above reasons, I find that § 301 of the LMRA preempts the plaintiffs' claims under the WPCL. Accordingly, I will grant the motion to dismiss plaintiffs' WPCL claims.[13]

---

[13] When courts find a WPCL claim preempted by the LMRA, they may treat the claim as a LMRA claim, but only if the plaintiffs have exhausted their administrative remedies pursuant to the CBA at issue. Allis-Chalmers, 471 U.S. at 220. Here, both the plaintiffs' original complaint and amended complaint fail to allege a single fact suggesting that they pursued the grievance procedures afforded them under their CBA. Therefore, I will dismiss the plaintiffs' WPCL claims rather than treat them as claims under the LMRA. Id.

I will not allow leave to amend the complaint regarding the WPCL claims. The situation here is nearly identical to Hughes, 2015 WL 1021312. In Hughes, the plaintiffs did not attach the CBA to their complaint in alleging a WPCL claim. 2015 WL 1021312, at *2–3. The court nonetheless held that the WPCL claims were preempted by § 301 of the LMRA, based upon the language in the complaint and the CBA, which was provided to the court as an attachment to the defendants' motion to dismiss. Id. at *2–5. In denying leave to amend, the court found that, like here, the plaintiffs' original complaint and amended complaint failed to allege exhaustion of grievance procedures under the CBA. Id. at *6. Also like the plaintiffs' response in Hughes, the plaintiffs' response to the motion to dismiss here was "completely silent as to this point." Id. For

## V. CONCLUSION

For all the foregoing reasons, I will grant First Student's motion to dismiss the FLSA overtime claim (Count II) with respect to all named plaintiffs except for Nicole Tucker, Brenda Vera, and Jessica Marinez. I will grant First Student's motion to dismiss the WPCL claims (Counts III and IV) as to all plaintiffs.

An appropriate Order follows.

---

these reasons, the court in Hughes found that amendment would be futile, especially since the plaintiffs had been given multiple opportunities to advise the court that they exhausted their administrative remedies under the CBA. 2015 WL 1021312, at *6. The same situation is present here. Accordingly, amendment would be futile.